**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**UNITED STATES OF AMERICA**
**ex rel. ROXANNE PERKINS,**

**Plaintiff,**

**v.** **Case No. 8:12-cv-2032-T-30EAJ**

**WELLCARE HEALTH PLANS, INC.,**

**Defendant.**
_______________________________________/

## ORDER

THIS CAUSE comes before the Court upon Defendant Wellcare Health Plans, Inc.'s Motion to Dismiss Plaintiff/Relator's Second Amended Complaint (Dkt. 48), Relator Roxanne Perkins' Opposition (Dkt. 49), and Defendant's Reply (Dkt. 53). Upon review of the motion, response, reply, and second amended complaint, the Court concludes that Defendant's motion should be granted with respect to Counts One-Three and denied with respect to Counts Four and Five.

## BACKGROUND

On or about September 7, 2012, Plaintiff Roxanne Perkins, a former employee of Defendant WellCare Health Plans, Inc., filed the *qui tam* complaint under seal alleging three counts under the False Claims Act ("FCA") against WellCare and certain subsidiaries. On or about September 28, 2012, Perkins amended her complaint. Subsequently, the United States declined to intervene.

On August 3, 2015, Perkins dismissed the WellCare subsidiaries. On October 28, 2015, Perkins served the first amended complaint. On January 15, 2016, this Court entered an Order dismissing the first amended complaint as a shot-gun pleading and permitting Perkins to amend her complaint. On January 29, 2016, Perkins filed her second amended complaint. She alleges three violations of the FCA (Counts One-Three) and two retaliation claims under the FCA and the Florida Whistleblower Act ("FWA") (Counts Four and Five).

WellCare now moves to dismiss the second amended complaint with prejudice under Rules 9(b) and 12(b)(6), Federal Rules of Civil Procedure. WellCare contends that Counts One-Three fail to: identify a single false claim submitted to the government; provide sufficient detailed facts as to the "who, what, when, where, why, or how"; and demonstrate first-hand knowledge of the allegations.

WellCare also argues that Counts Four and Five fail to allege sufficient facts establishing retaliatory discharge under the FCA and the FWA.

**STANDARD OF REVIEW**

A False Claims Act complaint must meet the heightened pleading standard set forth in Rule 9(b) of the Federal Rules of Civil Procedure, meaning it must allege fraud with particularity. *See United States ex rel. Clausen v. Lab. Corp. of America, Inc.,* 290 F.3d 1301, 1308-10 (11th Cir. 2002); *Hopper v. Solvay Pharm., Inc.,* 588 F.3d 1318, 1324 (11th Cir. 2009). "A False Claims Act complaint satisfies Rule 9(b) if it sets forth 'facts as to time, place, and substance of the defendant's alleged fraud,' specifically 'the details of the

defendants' allegedly fraudulent acts, when they occurred, and who engaged in them.'" *Hopper,* 588 F.3d at 1324 (quoting *Clausen,* 290 F.3d at 1310).

Failure to meet the pleading requirements of Rule 9(b) is grounds for dismissal pursuant to Rule 12(b)(6) for failure to state a claim on which relief may be granted. *See United States ex rel. Shurick v. Boeing Co.,* 330 Fed. App'x 781, 783 (11th Cir. 2009) (citing *Clausen,* 290 F.3d at 1310; *United States ex rel. Atkins v. McInteer,* 470 F.3d 1350, 1357 (11th Cir. 2006)). When considering a Rule 12(b)(6) motion, a court accepts the factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *See Chaparro v. Carnival Corp.,* 693 F.3d 1333, 1335 (11th Cir. 2012). However, a court is not required to accept a plaintiff's legal conclusions unsupported by facts. *See Ashcroft v. Iqbal,* 556 U .S. 662, 678 (2009). The plaintiff's factual allegations must support a claim for relief that is plausible on its face and rises above mere speculation. *See id.*

## DISCUSSION

### I. The FCA Counts

#### A. Counts One and Two ("Fraudulent Inducement")

Counts One and Two are, as Perkins admits, "fraudulent inducement" claims under 31 U.S.C. § 3729(a)(1)(B) and 31 U.S.C. § 3729(a)(1)(A). With respect to these claims, Perkins alleges that "beginning on an unknown date prior to November 2006," WellCare knowingly misrepresented in its contracts with fourteen states (the "Victim States") that it would meet the requirements of 42 C.F.R. 438.210(b)(3), which requires that a decision to

deny a service authorization request or to authorize a service in an amount, duration, or scope that was less than requested, would be made by a health care professional who had appropriate clinical expertise in treating the enrollee's condition or disease. Perkins contends that WellCare operated managed care programs on behalf of the Victim States and that these programs were funded, in whole or in part, by the federal government through its Medicare, Medicaid, and Children's Health Insurance ("CHIP") programs, as well as by the states. She alleges that "all of WellCare's health plans represented and promised that decisions to decline health care services requested for patients by their providers, or to approve such services in an amount less than requested, would be made by clinical personnel." And that WellCare made these promises and representations in the contracts in order to induce the Victim States to award contracts to WellCare and its subsidiaries for the implementation of managed care plans.

The second amended complaint provides two examples of WellCare's managed care contracts and notes that they both contain the following provision: "The Health Plan shall ensure that all decisions to deny a service authorization request, or limit a service in amount, duration, or scope that is less than requested, are made by health care professionals who have the appropriate clinical expertise in treating the enrollee's condition or disease (see 42 CFR 438.210(b)(3))." Perkins alleges that denials based upon medical necessity not being established were forwarded to a medical director for further review; however, denials citing lack of adequate medical information were not forwarded for further review.

These facts fall short of meeting the requirements of Rule 9(b). They are also insufficient to state a claim under Rule 12(b)(6). "[I]f Rule 9(b) is to be adhered to, some indicia of reliability must be given in the complaint to support the allegation of *an actual false claim* for payment being made to the Government." *Clausen*, 290 F.3d at 1311 (emphasis in original). Rule 9(b) "does not permit a False Claims Act plaintiff merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government." *Id.*

Perkins argues that all invoices for servicing WellCare's contracts were false because the contracts were fraudulently induced. Notably, the Eleventh Circuit has not considered a case where, as here, the Relator is claiming that all claims are false if a contract was fraudulently induced. *See United States ex rel. Sanchez v. Abuabara*, Case No. 10-61673-CIV, 2012 WL 254764, at *4 (S.D. Fla. Jan. 27, 2012) (noting that "whether allegations of fraudulent inducement deem all claims . . . 'false of fraudulent' is a question of first impression in the 11th Circuit."). If this Court assumes that such a claim is tenable, it still fails here because Perkins provides no details regarding the alleged fraudulent inducement. For example, Perkins makes conclusory allegations that WellCare fraudulently induced the Victim States to enter into contracts, but fails to provide the required who, where, when, and how the fraudulent inducement occurred. Indeed, there are no facts describing whether WellCare intended to make the false statements and whether the purported false statements

were even material to the contracts. Importantly, "a claim for reimbursement made to the government is not legally false simply because the particular service furnished failed to comply with the mandates of a statute, regulation or contractual term that is only tangential to the service for which reimbursement is sought." *Mikes v. Straus*, 274 F.3d 687, 697 (2d Cir. 2001). "[W]hile the Act is 'intended to reach all types of fraud, without qualification, that might result in financial loss to the Government,' *United States v. Neifert-White Co.,* 390 U.S. 228, 232, 88 S.Ct. 959, 19 L.Ed.2d 1061 (1968), it does not encompass those instances of regulatory noncompliance that are irrelevant to the government's disbursement decisions." *Id.*

Perkins also lacks the indicia of reliability that might otherwise excuse her failure to identify specific facts of the fraudulent inducement. *See United States ex rel. Sanchez v. Lymphatic, Inc.,* 596 F.3d 1300, 1302 (11th Cir. 2010). Although Perkins alleges in a conclusory fashion that she has direct and independent knowledge through her employment at WellCare, she provides no information as to when she started working for WellCare. And she does not include any facts of personal knowledge related to WellCare's execution of the purported fraudulent contracts. She also does not include facts related to the Victim States' alleged reliance on the purported misrepresentations. Accordingly, Counts One and Two are dismissed with prejudice.[1]

---

[1] The Second Amended Complaint is Perkins' third attempt to state a claim. Any further amendments would be futile.

**B. Count Three ("Implied Certification")**

Perkins contends that Count Three relies upon the implied certification doctrine. This false certification, or "implied certification," theory is viable in the Eleventh Circuit. *See United States ex rel. McNutt v. Haleyville Med. Supplies, Inc.,* 423 F.3d 1256, 1259 (11th Cir. 2005). "When a violator of government regulations is ineligible to participate in a government program and that violator persists in presenting claims for payment that the violator knows the government does not owe, that violator is liable, under the [False Claims Act], for its submission of those false claims." *McNutt,* 423 F.3d at 1259. "Proceeding under the false certification theory, however, does not alleviate [a] [r]elator's obligation to plead her case with particularity." *United States v. All Children's Health Sys., Inc.*, No. 8:11-CV-1687-T-27EAJ, 2013 WL 1651811, at *3-*4 (M.D. Fla. Apr. 16, 2013). In *McNutt,* the complaint alleging false certification survived dismissal because it identified *specific false claims*. *McNutt*, 423 F.3d at 1260 ("[T]he government has identified as false numerous specific claims the Burelsons made to the federal government.").

Here, Perkins relies on the same conclusory facts related to the alleged fraudulent inducement of the contracts to argue that WellCare's invoices were false claims because WellCare did not fulfill a material provision of its contracts. As explained above, the fraudulent inducement claim lacks sufficient allegations of the who, what, when, where, why, or how. And it is entirely unclear whether strict compliance with 42 C.F.R. 438.210(b)(3)

is even relevant or material to the government's disbursement decisions. Accordingly, Count Three is likewise dismissed with prejudice.

**II. Perkins' Retaliation Claims (Counts Four and Five)**

Perkins' retaliation claims under the FCA and the FWA rely on the following facts. Perkins alleges that, in May 2011, she returned to work at WellCare in Tampa "after a period of leave" as a clinical supervisor of prior authorizations and therapy. She discovered that WellCare had "implemented a new practice of approving all preauthorization requests for durable medical equipment items, without regard to medical necessity or other factors." When she asked about this new practice, she was told that she should "approve everything and not to worry about the required criteria being met."

In July and August of 2011, Perkins spoke to additional WellCare supervisors about the new practice and was told that the team would be compliant when it had enough nurses to conduct the precertification review procedures. Joan Gammercone, a Director of Utilization Management, told Perkins that Perkins was a "threat to the company."

On September 9, 2011, Perkins sent an e-mail to Blair Todt, the Chief Compliance Officer for WellCare in Tampa. Her e-mail stated, in relevant part, that she was sending the e-mail because her "recent objections to directives to ignore certain fraudulent activities and to let requests for authorization be approved in violation of federal and state laws about fraud have resulted in retaliation." She outlined that her manager had yelled at her after Perkins objected to falsifying documents to meet turnaround time. And that she was then given an

increased work load. When she complained about the extra work her supervisor said "we all know about fraud but sometimes you need to look the other way and ignore it to get your work done." The e-mail outlined other examples of "retaliation," such as being removed from invites to attend management meetings, receiving threats from a coworker, and being ignored by Human Resources. Perkins reiterated in her e-mail that she would not participate in fraudulent practices.

Subsequently, WellCare terminated Perkins. She alleges that the termination was in retaliation of her efforts to report violations of the FCA.

WellCare argues that the allegations are insufficient to state a claim under the FCA and the FWA. The Court disagrees.

The FCA includes a whistleblower provision, 31 U.S.C. § 3730(h), that allows employees to bring a retaliation claim against their employer if they are discriminated against in their employment because of their attempts to stop one or more of the false claims enumerated in the FCA. *See Ingle v. Janick,* No. 2:14-cv-544-FtM-39DNF, 2014 WL 6469412, at *3 (M.D. Fla. Nov.17, 2014). In order to state an FCA retaliation claim, a plaintiff must allege three elements: (1) she was acting in furtherance of an FCA enforcement action or other efforts to stop violations of the FCA; (2) the employer knew that the employee was engaged in the protected conduct; and (3) the employer was motivated to take an adverse employment action against the employee because of the protected conduct. *See United States v. KForce Gov't Solutions, Inc.,* No. 8:13-cv-1517-T-36TBM, 2014 WL 5823460, at *10

(M.D. Fla. Nov.10, 2014). As amended in 2009, the FCA protects employees that have been "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee ... in furtherance of an action under this section *or other efforts to stop 1 or more violations of this subchapter.*" 31 U.S.C. § 3730(h)(1) (emphasis added).

Notably, the 2009 amendment to the FCA "more broadly defines the scope of protected activity. The new language makes clear that section 3730(h) not only protects actions taken in furtherance of a potential or actual qui tam action, but also steps taken to remedy fraud through other means, such as by internal reporting to a supervisor or compliance department, or refusing to participate in unlawful activity." *Farnsworth v. HCA, Inc.*, No. 8:15-CV-65-T-24-MAP, 2015 WL 5234640, at *2-*3 (M.D. Fla. Sept. 8, 2015) (citing *United States ex rel. Sanchez v. Lymphatx, Inc.,* 596 F.3d 1300, 1304 n. 5 (11th Cir. 2010) (noting that "Congress's recent amendment provides relief to any employee discharged for acting 'in furtherance of other efforts to stop 1 or more violations of this subchapter'")). "No nexus to actual or threatened litigation is required, in contrast to the former version of the statute, which measured a retaliation claim by the likelihood of a substantive FCA suit being brought." *Bell v. Dean,* No. 2:09-cv-1082-WKW WO, 2010 WL 2976752, at *1 (M.D. Ala. July 27, 2010).

Here, Perkins alleges facts related to her efforts to stop what she believed to be fraud upon the government. She complained about WellCare's new practice of authorizing

requests by providers for medical services without any review to numerous supervisors. She was then told that she was a threat to the company and encouraged to ignore the fraud. Perkins also reported the alleged fraud to Todt, the Chief Compliance Officer, in the September 2011 e-mail. Perkins was then terminated. At this stage, these allegations are sufficient to state a claim. Notably, the "FCA does not require a plaintiff be terminated solely because he engaged in protected activity. Rather, the employer need only be motivated, at least in part by the employee's engaging in protected activity." *Farnsworth*, 2015 WL 5234640, at *7 (citations omitted).

For these same reasons, Perkins states a claim under the FWA. The FWA prohibits an employer from retaliating against an employee who objected to any unlawful activity, policy, or practice of the employer. *See* Fla. Stat. § 448.102(3). To state a prima facie case of retaliation under the FWA, "the employee must establish all three of the following elements: (1) the employee engaged in statutorily protected activity; (2) the employee suffered a materially adverse action that would discourage a reasonable employee from engaging in the statutorily protected activity; and (3) a causal relationship exists between the first two elements." *Bernuy v. Chipotle Mexican Grille, Inc.*, No. 8:14-CV-1430-T-24TBM, 2015 WL 4527706, at *5 (M.D. Fla. July 27, 2015). The facts in support of the retaliation claim under the FCA are sufficient to also allege a retaliation claim under the FWA. Accordingly, the Court will not dismiss Counts Four and Five.

It is therefore **ORDERED AND ADJUDGED** that:

1. Defendant Wellcare Health Plans, Inc.'s Motion to Dismiss Plaintiff/Relator's Second Amended Complaint (Dkt. 48) is granted in part and denied in part. Counts One, Two, and Three of the Second Amended Complaint are dismissed with prejudice.

2. Defendant shall file an answer to Counts Four and Five of the Second Amended Complaint within fourteen (14) days of this Order.

**DONE** and **ORDERED** in Tampa, Florida on March 18, 2016.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**

Counsel/Parties of Record

S:\Even\2012\12-cv-2032.mtdismiss-48.wpd